BERRY, MAYOR, ETC., *v.* EMBREY.

No. 41490          May 2, 1960          120 So. 2d 165

820

*Welch, Gibbes & Graves,* Laurel, for appellants.

*Lampkin Butts,* Laurel, for appellee.

ETHRIDGE, J.

This controversy arose over the denial of a building permit to appellee Embrey by the Mayor and Commissioners of the City of Laurel. He appealed to the Circuit Court of Jones County, Second Judicial District, which held that the proposed building did not violate existing building codes, the property was located outside the zoned areas, and the denial of the permit was unwarranted. It reversed and remanded the order of the municipal authorities denying the permit.

Dr. L. O. Embrey, Sr., purchased in the northern part of the City of Laurel a 3¾ acre tract of land. It is bounded on the south by 15th Street, and on the north by 16th Street, on the east by 5th Avenue, and on the west by Mason Memorial Park, belonging to the city. He applied for a building permit to construct a concrete block building 230 feet by 140 feet for commercial purposes, at an estimated cost of $161,000. No action having been taken, appellee filed a petition in support of his application for a building permit, urging the city authorities to act upon it. He planned to erect a shopping center, which would be well designed and attractive, and would contain a supermarket, a ten-cent store, drug store, barber shop and beauty shop. It would have off-street parking for 205 cars.

The property formerly contained a residence, a blacksmith shop of the resident, and undeveloped acreage. The neighborhood in which the land is located has been for many years a predominantly residential area. However, this land was not zoned by the city. The zoning line follows the south boundary of the Embrey property in dispute, apparently zoning that south of 15th Street for residential use.

The proposed construction fully complies with the 1920 and 1933 building code ordinances of the City of Laurel. The application complied with them. Forty-three citizens petitioned the city authorities to grant the application. On the other hand, several hundred citizens, including apparently most of those in the area surrounding the land, filed petitions objecting to the use for commercial purposes. The Board of Trustees of the Laurel City Schools passed a resolution opposing construction of the shopping center, on the ground it would create a traffic hazard for children attending a nearby school. The City Park Commission passed a resolution objecting to it, because of its proximity to Mason Park and a residential area. On November 19, 1958, there was a public hearing before the Mayor and Commissioners. They had previously employed a traffic engineer and city planner to formulate plans for the overall development of the city. He had begun a study of the matter, but had not formulated any overall plans. However, he advised the city that the property in question was not adapted for a shopping center, because of its location and inadequate acreage for off-street parking. He thought it should be zoned for apartment or residential purposes, but no zoning ordinance pertaining to this property had been enacted. The city had recently executed an oil, gas and mineral lease on the land comprising Mason Park.

On December 8, 1958, the Mayor and Commissioners passed an order denying Embrey's application for a building permit. It recited that the city had employed city planners to make studies of overall development of

the city, and, until their surveys were completed, it would not be to the best interest of the city to permit changes of character in a neighborhood; that the permit would change the nature of this residential area, would constitute a nuisance, and endanger the safety of school children; and that a shopping center should contain a minimum of 12 acres, and be located on a main thoroughfare. Applicant's plans indicate his land is located between two narrow streets. The shopping center would result in a large increase in traffic in the area, would overcrowd it, and change drainage problems in the vicinity. Hence the application for permit was denied.

The circuit court reversed this order of the Mayor and Commissioners. It held the property was not zoned residential, and the application complied with the ordinances establishing building restrictions. The city erroneously attempted to zone the land, when there was no validly enacted zoning ordinance. Hence the order of the city authorities denying the permit was beyond their power, and it was reversed and the cause remanded for further action not inconsistent with the judgment of the circuit court.

██ █ A municipality has the discretionary authority, through its governing body, to adopt building codes and related regulations. Miss. Code 1942, Sec. 3374-80. This includes the power to regulate, restrain or prohibit the erection of buildings made of certain types of materials "within such limits as may be prescribed by ordinance". Code Sec. 3374-140. See also Code Secs. 3374-150, 3374-148. In the instant case, the building permit sought by Embrey complies fully with the existing building codes of the City of Laurel.

Moreover, appellee's property is not zoned by the city, under the authority given it by Miss. Code 1942, Secs. 3590-3597.

██ █ 62 C. J. S., Municipal Corporations, Secs. 224 and 225, pp. 409-411, points out that building regulations are distinct in character from zoning ordinances: "Regu-

lations relating to the safety and structure of buildings are designed to promote the public welfare from a standpoint wholly different from that promoted by zoning regulations, and building and zoning regulations are distinct from each other notwithstanding in a broad sence each pertains to the construction and alteration of buildings. Building regulations are not necessarily inconsistent with zoning regulations, and both sets of regulations may remain in full force at the same time. . . . ██ ██ Whenever the owner's right to pursue his own plans in building, altering, or repairing is challenged, it is determined by two tests: (1) Has the corporation power to forbid the contemplated erection, alteration, or repair? (2) Has it lawfully exercised the power by properly enacting a prohibitory ordinance? An affirmative answer to both questions is essential in order to sustain the municipal authority.'' Norcross v. Building Dept. Board of Appeals, 225 Mass. 177, 150 N. E. 887 (1926) ; Turner v. Board of Appeals of Town of Milton, 305 Mass. 189, 25 N. E. 2d 203 (1940) ; Brougher v. Board of Public Works of San Francisco, 107 Cal. App. 15, 290 P. 140 (1930).

In short, a building code has particular reference to the construction, maintenance and repair of buildings within a municipality. Zoning may restrict the methods of construction and repair of buildings, but a zoning ordinance must be in accordance with a ''comprehensive plan'' pertaining to the use of land within a municipality. Miss. Code 1942, Secs. 3591, 3592.

██ ██ Since appellee's property has not been zoned by the city, and the proposed construction complies with the building codes, the mayor and board of commissioners were acting arbitrarily and in excess of their powers in denying the building permit. ██ ██ In such instances, the aggrieved property owner can obtain a writ of mandamus. City of Jackson v. Ashley, 189 Miss. 818, 199 So. 91 (1940). Or he may appeal from the order of the municipal governing authority denying the application

for building permit, as was done here under Code Sec. 1195. Where a municipal governing body, in denying a permit to construct a building, has acted beyond its statutory power or where the denial is unreasonable, arbitrary, discriminatory, abusive of discretion or unlawful, the courts will furnish the aggrieved party redress. 9 McQuillin, Municipal Corporation, (3d Ed., 1950), Sec. 26.221.

The City of Laurel was clearly in error in refusing appellee a building permit. The proposed structure complied with the building code of the city, and the land was not within a zoned territory.

Municipal authorities have a wide area of discretion in their zoning decisions, but that is not an issue in this case. Cf. City of Jackson v. McPherson, 158 Miss. 152, 130 So. 287 (1930); Board of Aldermen v. White, 230 Miss. 698, 93 So. 2d 852 (1957); Walker v. City of Biloxi, 229 Miss. 890, 92 So. 2d 227 (1957); Ballard v. Smith, 234 Miss. 531, 107 So. 2d 580 (1958); but see Hattiesburg v. Pittman, 233 Miss. 544, 102 So. 2d 352 (1958). Nor are we confronted here with questions pertaining to a building permit issued before the effective date of an enacted zoning ordinance applying to a particular tract. 8 McQuillin, ibid., Secs. 25.154 to 25.157. Hence the circuit court was correct in reversing the order of the Mayor and Board of Commissioners denying the permit, and remanding this cause to that body for further proceedings consistent with this decision.

Affirmed.

*McGehee, C. J.*, and *Lee, Kyle* and *Gillespie, JJ.*, concur.