ROBERTSON, Justice:
The Chancery Court of Jackson County, Mississippi, found that a large two-story structure of the appellants on Main Street in the City of Moss Point constituted a public nuisance and ordered the appellants to demolish and remove the building known as Harris Apartments within ninety days from July 2nd, 1969, (the date of the decree of that court), and, in the event the appellants failed to do so, the City of Moss Point could demolish and remove the building at the expense of the appellants, and a lien would be impressed on the real property of the appellants to secure the payment of all expenses of removal.
The appellants earnestly contend in this Court that this is a taking of private property for a public use without compensation, is unconstitutional, and is prohibited by Section 17, Article 3 of the Mississippi Constitution.
The City of Moss Point passed an ordinance on February 8, 1967, pursuant to the provisions of Section 3374-80, Mississippi Code of 1942 Annotated, (1956), adopting the Southern Standard Housing Code. Section 103.2 of that housing code provides :
“All dwellings, apartment houses, rooming houses or buildings or structures used as such which are unsafe, unsanitary, unfit for human habitation, or not provided with adequate egress; or which constitute a fire hazard, or are otherwise dangerous to human life, or *271 which in relation to existing use constitute a hazard to safety or health by reason of inadequate maintenance, dilapidation, obsolescence, or abandonment, are severally in contemplation of this section, unsafe buildings. All such unsafe buildings are hereby declared illegal and shall be abated by repair and rehabilitation or by demolition in accordance with the following procedure:”
That Section further provided for notice to the owner of defects found and a requirement that the owner either repair these defects or demolish and remove the building within a stated time. A notice was required to be posted at each entrance to the defective building and if repairs were not made or the building removed within the stated time, then the city could remove the building at the owner’s expense.
On April 20, 1967, the Building Inspector of Moss Point inspected Harris Apartments and on April 21st, 1967, sent written notice by mail to appellant Harris setting forth the defects which rendered the building unsafe, unsanitary, a fire hazard and a health hazard. On May 2nd, 1967, he posted a notice on the property and caused a copy of the notice to be personally served on appellant Harris. On June 16th, 1967, the Building Inspector served notice on appellant Harris that the building, known as Harris Apartments, was unsafe, unsanitary and unfit for human habitation, and required that said building be cleaned up, repaired and put in good condition, or be demolished within 60 days from June 16, 1967.
When the appellants failed and refused to do anything about their property, the City of Moss Point finally filed a bill of complaint on March 21st, 1968. An amended bill of complaint was filed on February 14th, 1969, wherein the appellee charged:
“That because of structural defects, dilapidation, deterioration and lack of maintenance said building known as Harris Apartments is a dangerous condition and fire hazard endangering the lives and property of citizens and the public within the said City of Moss Point, Mississippi; that said building known as the Harris Apartments is infested with disease carrying vermin and is foul smelling nuisance which constitutes a hazard to the safety and health of the citizens and the public of the City of Moss Point, Mississippi; that said building is in close proximity to heavily populated areas of the City of Moss Point, Mississippi, and is located on the major thoroughfare through the said City of Moss Point, Mississippi; that said building known as Harris Apartments is in close proximity and adjoins residential property, commercial property and establishments serving both food and beverages within the said City of Moss Point, Mississippi; that by virtue of the close proximity of said building known as Harris Apartments to the populated and heavily traveled areas of the said City of Moss Point, said building constitutes a fire hazard dangerous to human life and property in the City of Moss Point, Mississippi; that said building known as Harris Apartments is in such a state of dilapidation as to be of no value and a nuisance and its continued presence within the City of Moss Point is offensive to the senses and should be demolished.”
A full hearing was held on the amended bill of complaint, answer and cross-bill of appellants, and answer of appellee to the cross-bill.
The testimony of numerous witnesses and the exhibits, in the form of colored pictures, amply and fully supported the Chancellor’s findings that Harris Apartments, the property of appellants, was structurally defective, dilapidated, deteriorated and rotted down to such an extent that it was unfit and unsafe for human habitation, constituted a fire hazard, a health and safety hazard, and a public nuisance, and should be abated.
The Chancellor was correct in finding that from April 21, 1967, to June 26, 1969, *272 (the date of his opinion), the appellants made no serious effort to either repair their building, or remove it and clear their property. He was correct in his ruling that the appellants must demolish and remove this dangerous and unsafe structure within ninety days from July 2nd, 1969, the date of the final decree, or, in the event appellants failed to do so, that the appellee could demolish and remove the building and clear the land at the expense of the appellants, and a lien would be impressed on the real property of the appellants to secure the expenses incurred by the appel-lee.
We said in Berry, Mayor, etc. v. Embrey, 238 Miss. 819, 120 So.2d 165 (1960):
“A municipality has the discretionary authority, through its governing body, to adopt building codes and related regulations. Miss.Code 1942, Sec. 3374-80. This includes the power to regulate, restrain or prohibit the erection of buildings made of certain types of material ‘within such limits as may be prescribed by ordinance’. Code Sec. 3374-140.” Id. at 823, 120 So.2d at 167.
Heretofore, this Court has never been called on to rule on the proposition of whether a municipality is authorized to raze and remove an unsafe and unfit building at the expense of the property owner when he has failed and refused to either repair his building or remove it and clear his land.
In Brown et al. v. Tobriner et al., Commissioners of the District of Columbia, 114 U.S.App.D.C. 94, 312 F.2d 334 (1962), where the District had a similar ordinance providing for the removal of unsafe and unfit buildings at the owner’s expense, the United States Court of Appeals for the District of Columbia Circuit held that a municipality was entitled to reimbursement from the landowners for all expenses incurred in removing a building declared so unsafe as to require immediate razing, absent any action on the part of the landowners after proper notice. The appellate court also approved the impressing of a lien on the property to secure the payment of expenses of removal.
7 McQuillin, The Law of Municipal Corporations, (3rd ed. 1968), § 24.558, has this to say about the action that municipalities may take:
“Buildings that constitute public nuisances are subject to appropriate and reasonable municipal regulation and action to prevent their continuance as such. Accordingly, buildings may be declared nuisances by ordinance, or by an order of condemnation or for abatement, where they are nuisances in fact. Thus, tenement houses that are not sufficiently lighted, ventilated, clean or sanitary, with properly constructed water closets, may be declared public nuisances.” Id. at 587-8.
As to removal or destruction without compensation, McQuillin, § 24.561, says:
“It is a general rule that a municipality in the exercise of its police power may, without compensation, destroy a building or structure that is a menace to the public safety or health, but public necessity is the measure of this municipal right, and the requisite of public necessity precludes destruction of valuable property except in case of emergency or in case of refusal or neglect of the owner, after reasonable notice and opportunity, to remove or correct the evil constituting the nuisance.” Citing Houston v. Lurie, 148 Tex. 391, 224 S.W.2d 871, 14 A.L.R.2d 61. Id. at 591. (Emphasis added).
* * * * * *
“A right to reimbursement and a lien on the real estate generally accrues to a municipality for its expense in rightfully demolishing a condemned building.” Citing Brown v. Tobriner [114 U.S.App.D.C. 94], 312 F.2d 334. Id. at 596. (Emphasis added).
The right of a municipality to require the dismantling, razing and removing of a structure which violated the town’s zoning ordinance and building code was affirmed by the Court of Civil Appeals of Texas *273 in Newton et vir. v. Town of Highland Park et al., 282 S.W.2d 266 (1955).
In City of Chicago v. James E. Mulligan Enterprises, Inc., 27 Ill.App.2d 481, 170 N.E.2d 13 (1960), the appellate court of Illinois affirmed the judgment of the lower court authorizing the city to demolish an unsafe building and impressing a lien on the premises to secure reimbursement of expenses.
It is a sensible and reasonable rule that where the property owner, after reasonable notice provided for in an ordinance, fails and refuses to either repair or remove an unsafe and unfit building that constitutes a public nuisance, that the municipality can remove it at the owner’s expense. Otherwise the property owner could enjoy the profits from his building during its useful life and then neglect or abandon it in its old age and demand that the municipality, at the expense of all taxpayers, compensate him for it or remove it and clear his property so that he could show his land to its best advantage.
We think that the lower court was correct and its judgment should be affirmed.
Affirmed.
ETHRIDGE, C. J., and RODGERS, PATTERSON, and SMITH, JJ., concur.