IN THE SUPREME COURT OF MISSISSIPPI
NO. 2000-CA-00695-SCT

*BOBBY LADNER*

*v.*

*HARRISON COUNTY BOARD OF SUPERVISORS*

| | |
|---|---|
| DATE OF JUDGMENT: | 03/20/2000 |
| TRIAL JUDGE: | HON. ROBERT H. WALKER |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | THOMAS M. MATTHEWS, JR. |
| ATTORNEY FOR APPELLEE: | JOSEPH R. MEADOWS |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| DISPOSITION: | REVERSED AND RENDERED - 09/06/2001 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 9/27/2001 |

**BEFORE McRAE, P.J., SMITH AND MILLS, JJ.**

**MILLS, JUSTICE, FOR THE COURT:**

¶1. This appeal is from a judgment of the Circuit Court of the First Judicial District of Harrison County, Mississippi affirming the decision of the Board of Supervisors of Harrison County, Mississippi designating a certain roadway lying along the west bank of the Wolf River as a public road or public highway.

## FACTS

¶2. Bobby Ladner lives in Saucier and additionally owns property located along the Wolf River. On July 13, 1998, the Harrison County Engineering Department sent Ladner a letter stating that the Harrison County Board of Supervisors had accepted four affidavits attesting that the road leading to and across his property had been utilized by the public for over ten years. According to the letter, the Board ordered this road be accepted as a public right-of-way. Ladner was instructed that any obstructions blocking the road would be removed by the Harrison County Road Department, with costs assessed to him.

¶3. Ladner filed a motion for reconsideration. He attached fourteen affidavits in support of his claim that there was no public road. Ladner claimed he had no notice of the original proceeding until he received the letter. He also asserted that the road was not properly legally described as to be identifiable, it was not public in nature, it had never been maintained by the County or any other public body, that the County had never acquired title by prescription nor by road petition as required by Miss. Code Ann. § 65-7-57 (1991), and that the actions of the Board amounted to an unlawful taking of private property without due process of law.

¶4. The Board granted a hearing on August 10, 1998. There was no testimony taken at this hearing. Ladner presented the Board with thirteen pictures of the road. The Board denied his request for reconsideration.

¶5. Ladner filed a bill of exceptions in the Circuit Court of Harrison County, First Judicial District. The

circuit court affirmed the Board's decision. Aggrieved, Ladner has perfected this appeal.

## STANDARD OF REVIEW

¶6. The standard of review of an order of a Board of Supervisors is the same standard which applies in appeals from the decisions of administrative agencies. *Barnes v. Board of Supervisors*, 553 So. 2d 508, 511 (Miss. 1989). "The decision of an administrative agency is not to be disturbed unless the agency order was unsupported by substantial evidence; was arbitrary or capricious; was beyond the agency's scope or powers; or violated the constitutional or statutory rights of the aggrieved party." *Board of Law Enforcement Officers Standards & Training v. Butler*, 672 So. 2d 1196, 1199 (Miss. 1996). *See also Van Meter v. City of Greenwood*, 724 So. 2d 925 (Miss. 1998).

¶7. Appeals from a board of supervisors or municipal authority are made to the circuit court by the party aggrieved. The parties prepare a bill of exceptions, which is signed by the board of supervisor's president, which embodies the facts, judgment, and decision involved in the Board proceedings. Miss. Code Ann. § 11-51-75 (1972). "The bill of exceptions serves as the record on appeal," and the circuit court must limit its review to the " 'case made by the bill of exceptions.' " *Van Meter v. City of Greenwood*, 724 So. 2d at 928 (citing *Stewart v. City of Pascagoula*, 206 So. 2d 325, 328 (Miss. 1968)): *Accord*, *Ganier v. Mansour*, 766 So. 2d 3, 6-7 (Miss. Ct. App. 2000).

## DISCUSSION

¶8. A public road may be created in one of three ways: by prescription, dedication, or pursuant to statutory provisions. *George County Bd. of Supervisors v. Davis*, 721 So. 2d 1101, 1106 (Miss. 1998) (citing *Coleman v. Shipp*, 223 Miss. 516, 530, 78 So. 2d 778, 784 (1955) (citing *Armstrong v. Itawamba County*, 195 Miss. 802, 16 So. 2d 752, 757-58 (1944)); Miss. Code Ann. § 65-7-57 (1991). The Board of Supervisors found the road in question was public by prescription. The issue of a county attempting to claim title to a road by prescription is not new to us:

> The county claims the road public by prescription and, therefore, has the burden of proving, as does an individual claimant, that the use is:
>
> (1) open, notorious and visible;
>
> (2) hostile;
>
> (3) under claim of ownership;
>
> (4) exclusive;
>
> (5) peaceful; and
>
> (6) continuous and uninterrupted for ten years.

*George County*, 721 So. 2d at 1107 (citing *Myers v. Blair*, 611 So. 2d 969, 971 (Miss. 1992)).

¶9. We have consistently held that the Board of Supervisors can only act through its minutes. *George County*, 721 So. 2d at 1107 (citing *Martin v. Newell*, 198 Miss. 809, 23 So. 2d 796 (1945); *Noxubee County v. Long*, 141 Miss. 72, 82, 106 So. 83, 86 (1925); *Smith v. Board of Supervisors*, 124 Miss.

36, 86 So. 707 (1921)). Yet, there is no mention of the Board's minutes, and they are not a part of the record now before us. The circuit court found that the Board had relied on six affidavits, 13 photographs of the roadway, and other "credible evidence" in making its decision.[1] The affidavits are identical in form. Each reads as follows:

1. The undersigned has been a resident of Harrison County for more than ("X") years;

2. The undersigned is familiar with a road located in Harrison County commonly known as River Road located in Section _____, Township _____ South, Range _____ West;

3. Based upon the personal knowledge of Affiant, said Road has been in use by the public for at least ("X") years.

The "River Road" and "Road" portions were handwritten by each affiant, along with his or her corresponding number of years. In all six affidavits, the blanks which would have identified the section, township, and range of the road were left unanswered. Ladner submitted the 13 photographs of the roadway at the hearing. The circuit court found that "the Board found [the pictures] clearly indicated that the roadway had been used by the public."

¶10. This Court has no idea what was considered "other evidence" as referred to by the circuit court. Neither the findings of fact and conclusions of law nor the judgment of the circuit court ever identify specifically what this other evidence is. Ladner's bill of exceptions alleges five bases that the Board relied on when making its determination. He asserted the Board relied on the affidavits, the copy of the letter sent to Lander by the engineering department, Ladner's motion for reconsideration, and the photographs Ladner submitted. Also listed is a "report and recommendation of County Engineer's Office." Ladner asserted that a copy was unavailable to him at the time, but requested the Board to attach a copy before it filed the bill of exceptions in the circuit court. Any report and recommendation is not a part of the record, and no further reference is made to it.

¶11. The original photographs are not a part of the record before us. It is difficult to discern from the copies whether any portion of the roadway is paved, and if so, to what extent. If the road is paved, there is no detectable "shoulder," only thinning areas of grass growing in the sand. However, the pictures clearly show a "posted" sign at a point which Ladner claims is the beginning of the roadway. The remaining text on the sign is indecipherable. Finally, as Ladner points out, at some point the "road" becomes merely two tire tracks in the sand. The Board has not disputed the accuracy of these photographs.

¶12. Ladner's basic contention is that all the Board had before it were the affidavits and the photographs and that these were insufficient to support the Board's assertion of prescription. We agree. It was incumbent upon the Board to prove that *all* six elements of prescription were present. *George County*, 721 So. 2d at 1107. At the very most, the affidavits could only be said to establish the sixth element, i.e. the requirement that the use be continuous and uninterrupted for ten years. Yet, even that assertion is a stretch. "It is the right of all persons to travel upon a road, and not merely their traveling upon it, that makes it a public road or highway."*Gulf & S. I. R. Co. v. Adkinson*, 117 Miss. 118, 77 So. 954, 955 (1918).

¶13. In *George County*, this Court rejected the Board of Supervisors' argument that it had gained certain roads by an alleged affidavit procedure. The surrounding landowners and others familiar with the road submitted affidavits that the road had existed and that the county had maintained the road for at least ten

(10) years. 721 So.2d at 1107. We said that:

> In order for a road to become public by prescription the road must be habitually used by the public in general for a period of ten years, **and** such use must be accompanied by a claim by the public of the right to do so.

*Id.* (emphasis in original). The Board in **[George County](#)** relied solely on the fact that the county had maintained the road for more than 10 years. We held this maintenance, in and of itself, was insufficient. *Id.* We went on to say that the affidavits the Board submitted were *not exclusive proof, but only one factor to be considered*. *Id.* In upholding the chancellor's decision, we noted the chancellor had considered the Board minutes, the State Auditor reports, testimony from Board members, the public and State Auditors, and an on-site inspection of each road. *Id.*

¶14. Turning to the present case, the only evidence before the Board, and now before us, are the affidavits and the photographs. Assuming arguendo the public had used this road for at least the ten-year minimum, this is simply not enough. The Board has not offered any evidence establishing that the public has claimed a right to use the roadway as a public road. The Board has not shown any county exertion of dominion over the roadway in question, such as whether the county maintained the road, whether mail carriers used it to deliver the mail, whether school busses used it to pick up school children, etc. *See also* **Myers v. Blair**, 611 So. 2d 969 (Miss. 1992); **Armstrong v. Itawamba County**, 195 Miss. 802, 16 So. 2d 752 (1944); **Gulf & S.I.R. Co. v. Adkinson**, 117 Miss. 118, 77 So. 954 (1918). There are an additional five elements that the Board must establish before the county can be said to have title to this road by prescription. We believe, as a matter of law, this trifling amount of evidence is insufficient to permit the county to claim ownership of the roadway.

¶15. The Board's response before this Court is basically to regurgitate portions of the circuit court's judgment. The Board asserts that:

> the trial court found that neither the Appellant's pleadings nor his presentation to the Harrison County Board of Supervisors or the trial court, did Appellant contest the Board of Supervisors finding that the roadway had been used by the public, including all necessary elements for the Board to declare the road to be a public road by prescription, **for that portion of the road which begins at Menge Avenue and traverses over and across all of the lots leading up to Lot 5-3, which was owned by Appellant.**

(emphasis in original).

¶16. The paragraph of the judgment which follows expounds this notion:

> Stated differently, [Ladner] was in agreement that for the past forty (40) years, as per one of the affidavits presented to the Board, this was a "public road", [sic] which ended at the boundary of his lot, but did not traverse over his lot to the remaining lots.

¶17. Ladner did place particular emphasis on that portion of the road which begins at his lot. He asserted in his motion for reconsideration that he had maintained a gate on the south boundary of his lot, and that there was no "road" north of this point, only two tire tracks leading to his parking area. Yet, it can hardly be said that Ladner agreed that the road was public south of his lot. Each of the fourteen affidavits he submitted contained the assertion that the road "as it runs along the east side of *all lots lying south of Lot 5-3*

*[Ladner's lot]*," the road had been granted by private easement or agreement.[2] (emphasis added). The affidavits also stated that "the private road traversing the eastern portions of the lots lying south of log [sic] 5-3, *was put in by Bobby Ladner and those assisting him, not more than seven (7) years ago*." (emphasis added). Ladner clearly disputed that the entire roadway was public and that the elements of prescription were met.

¶18. Ladner believes the Board was primarily moved to act out of concern for the right of William Sawyer to access his lot. Sawyer's lot is located between Ladner's two lots. Ladner refers to the portion of the letter sent to him by the Harrison County Engineering Department which stated: "Specifically, Mr. William Sawyer can use this road to access his property lying north of yours." There is no evidence in the record to indicate Ladner ever denied Sawyer access on the roadway or of an underlying dispute between the two. Ladner asserts the Board has effectively granted Sawyer a private easement, and reminds us that we have previously said that "the grant of a private easement to strangers, not parties to the court proceeding, is not only manifestly erroneous but fundamentally wrong." ***Myers v. Blair***, 611 So. 2d at 973. If Sawyer's lot was landlocked, this rings of a claim of necessity. However, necessity was not the ground relied upon by the Board. The Board justified its actions via prescription, and the requisites simply were not satisfied.

## CONCLUSION

¶19. For these reasons, the judgments of the Harrison County Circuit Court and the Harrison County Board of Supervisors are reversed and rendered.

¶20. **REVERSED AND RENDERED.**

> **PITTMAN, C.J., BANKS, P.J., SMITH, WALLER, COBB AND DIAZ, JJ., CONCUR. McRAE, P.J., CONCURS IN RESULT ONLY. EASLEY, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.**

1. The letter that the Harrison County Engineering Department sent to Ladner only referred to four affidavits relied upon by the Board. However, all six are identical in form. Therefore, the issue of whether the Board considered four or six affidavits is without consequence.

2. Ladner asserted in his motion for reconsideration that Sawyer had access to his property by private easement. The motion asserted that a copy of a warranty deed had been attached to it as an exhibit. However, there is no copy of a warranty deed in the record before us.